UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**RICHARD WILLIAM JOHNS,**

        **Claimant,**

v.                                                           **Case No:  6:19-cv-1329-Orl-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

**MEMORANDUM OF DECISION**

Richard William Johns (Claimant) appeals the Commissioner of Social Security's final decision denying his application for a period of disability and Disability Insurance Benefits. Doc. 1. Claimant argues that there is no substantial evidence in the record to support the conclusion that he is not disabled. *Id*. at 2. Claimant requests that the Court reverse the Administrative Law Judge's (ALJ) decision or, in the alternative, remand the case for rehearing. *Id*.

For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

**I.     Procedural History**

This case stems from Claimant's application for a period of disability and disability insurance benefits. R. 10. Claimant alleged a disability onset date of November 7, 2010. *Id*. The claim was denied initially and upon reconsideration. *Id*. A hearing was conducted and the ALJ issued an unfavorable decision on August 1, 2018. R. 26. The Appeals Council denied the request for review. R. 1.

**II.     The ALJ's Decision**

In the decision, the ALJ found that Claimant has the following severe impairments: lumbar spondylolisthesis with spinal stenosis, ischemic heart disease, peripheral vascular disease,

hypertension, and chronic obstructive pulmonary disease. R. 13. The ALJ further found that Claimant does not have an impairment or combination of impairments that meets or medically equals any listed impairment. R. 18.

The ALJ found that the Claimant had the residual functional capacity (RFC) to perform light work except:

> the claimant can climb ramps and stairs frequently, but he should neve climb ladders, ropes, or scaffolds. The claimant can frequently balance but he can only occasionally stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to unprotected heights and moving machinery, vibration, pulmonary irritants and temperature extremes. The claimant can frequently handle, finger and feel with the right hand.

R. 19.

The ALJ found that Claimant was unable to perform his past relevant work through the date last insured. R. 30. The ALJ found that through the date last insured, considering the Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform (20 CFR 404.1569 and 404.1569(a)). *Id*. Ultimately, the ALJ found that Claimant was not under a disability, as defined in the Social Security Act, at any time from December 21, 2013,[1] through June 30, 2016, the date last insured. R. 31.

### III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards, and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)

---

[1] While Claimant alleged disability began November 7, 2010, the ALJ's decision notes that there was a prior determination issued at the reconsideration level on December 20, 2013, finding that he was not disabled. The ALJ stated that based on the alleged onset date for the application, there was an implied request to reopen. R. 10. However, the ALJ found no basis upon which to reopen and addressed the time period from December 21, 2013 to June 30, 2016. *Id*.

(quotations omitted). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV. Discussion

### A. Issue No 1: Whether the ALJ applied the correct legal standards to Dr. Ranson's opinion

Claimant argues that the ALJ failed to apply the correct legal standards to Dr. Ranson's opinion and made findings not supported by substantial evidence. Doc. 18 at 12. Claimant explains that the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," and a treating physician's opinion must be given substantial or considerable weight unless good cause is shown. Doc. 18 at 11. Claimant states that Dr. Ranson completed an Application for Disabled Person Parking Permit on his behalf. *Id*. Claimant complains that the ALJ agreed with Dr. Ranson that Claimant had limitations in his ability to walk, but yet found that he could perform light work. *Id*. The ALJ's decision provided the following:

> On January 6, 2016, Dr. Ranson submitted an application for a permanent permit for disabled person due to severe limitation in the claimant's ability to walk due to arthritic, neurological or orthopedic condition (Exhibit 6D). The undersigned concurs with Dr. Ranson that there are limitations, including walking. After bypass surgery, Dr. Ranson observed areas that were palpable in the vascular system and

>edema in the bilateral ankles. However, this began improving. Further, Dr. Ranson determined the claimant's walking was limited by back pain. This supports some limitations but the opinions appear disproportionate. Dr. Ranson repeatedly observed the musculoskeletal and neurological system exhibited a normal range of motion and normal strength without focal deficits. Further, sensation was normal and the June 16, 2016 segmental pressures performed showed no evidence of resting ischemia in the bilateral lower extremities; and ankle/brachial indices were with normal limits (Exhibits 14F, 25F, 38F). Therefore, the undersigned accords partial weight to Dr. Ranson's opinions levied in the parking permit application.

R. 29.

Claimant states that Dr. Ranson recommended that Claimant undergo aortobifemoral bypass on September 2, 2015 and completed the parking permit application a few weeks before his scheduled surgery and "based on his expertise, Dr. Ranson opined that [Claimant] would need a permanent permit." Doc. 18 at 13. Claimant adds Dr. Ranson noted on March 9, 2016, that he was "[l]imited now by lungs more than legs. He needs to keep working on activity level," and on June 15, 2016, Dr. Ranson opined that claimant was "recovering well. Limited now by back more than legs. He needs to keep working on activity level." *Id*.

Claimant argues that "[t]his supports a finding that [he] was not completely recovered from his surgical procedure prior to June 30, 2016, the date he last met the insured status requirements of the Social Security Act and supports Dr. Ranson's opinion that Mr. Johns need a permanent permit." *Id*. at 13. Claimant asserts that the opinion supports a finding that he is limited to sedentary work and, since he is closely approaching advanced age, had a high school education, and did not have any transferable skills, would direct a determination of disability. *Id*.

In sum, it seems Claimant contends that the ALJ failed to give substantial weight to Dr. Ranson's opinion as a treating physician and instead gave only partial weight without good cause.

The Commissioner on the other hand argues that the ALJ properly considered Dr. Ranson's opinion and articulated good cause for only giving it partial weight. Doc. 18 at 14. The weighing

of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process. "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c); 416.927(c). A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel*, 631 F.3d at 1179 (quotation marks omitted).

Here, the undersigned agrees with the Commissioner that the ALJ articulated an appropriate reason for discounting Dr. Ranson's opinion and assigning partial weight. The record reflects that Dr. Ranson filled out the parking permit application and checked a box indicating that Claimant had a disability that would impair his ability to walk 200 feet without stopping to rest

and that he had a severe limitation in his ability to walk due to an arthritic, neurologic, or orthopedic condition. R. 198. Even so, the ALJ explained that Dr. Ranson's finding that Claimant's walking was limited by back pain supported some limitation but the physician's other findings—with citation to the records regarding his muscoskeletal and neurological system, sensation, ankle/brachial indices, and the performed segmental pressures—warranted a partial weight determination. *Id*. The ALJ agreed that there are limitations which include walking but specified that the opinions appeared "disproportionate." R. 29.

As such, the undersigned finds that the ALJ's decision was based on articulated reasons that are supported by substantial evidence. Namely, that Dr. Ranson's opinion was not consistent with his record. *See Winschel*, 631 F.3d at 1179 ("Good cause exists when the . . . treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."). The ALJ properly stated good cause for assigning only partial weight to the opinion and, therefore, the final decision is due to be affirmed. *See D'Andrea v. Comm'r of Soc. Sec.*, 389 Fed.Appx. 944, 948 (11th Cir. 2010) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it.").

The undersigned notes that Claimant's mention of the definition of "light work" in the C.F.R. appears to be offered in support of the argument that he cannot perform this level of exertion because his ability to walk is limited per Dr. Ranson's opinion. In other words, while Claimant does not exactly draw this conclusion, it is apparently his position that Dr. Ranson's opinion on the walking limitation means that he cannot perform light work because that level of exertion requires:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job

>is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

Doc. 18 at 12, citing 20 C.F.R. § 404.1567(b).

As an initial matter, assuming this is the argument, it was stated in a perfunctory manner and it is, therefore, waived. *See Jacobus v. Comm'r of Soc. Sec.*, 2016 WL 6080607, at *3 n.2 (11th Cir. 2016) (stating that claimant's perfunctory argument was arguably abandoned)).

Regardless, to the extent that Claimant has provided enough analysis to the Court to get beyond waiver, the undersigned does not find the argument persuasive. Social Security Ruling 83-10 provides that light work requires "standing or walking, off and on, for a total of approximately 6 hours of an 8 hour workday. . . . Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk." SSR 83-10. The ALJ took Dr. Ranson's record into consideration even though he discounted the opinion and agreed with Dr. Ranson that there was a limitation to walking. There is no adequate showing that the RFC is inconsistent with such a limitation. *Preston v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 104329, at *22 (M.D. Fla. Apr. 28, 2017) ("It is Plaintiff's burden to demonstrate that the claimant has limitations greater than those incorporated in the RFC.").

Lastly, Claimant seems to offer his assessment of Dr. Ranson's medical record to support his argument that the ALJ did not apply the correct legal standards. While it is Claimant's opinion that the record "supports a finding that [he] was not completely recovered from his surgical procedure prior to June 30, 2016. . .," it is not the role of the Court to reweigh the evidence. *See Heckler*, 703 F.2d at 1239. This argument does not entitle Claimant to relief.

### B. Issue No 2: Whether the Commissioner satisfied his burden of proof at step five of the sequential process

Claimant argues that the Vocational Expert's (VE) testimony at the hearing does not constitute substantial evidence to support a finding of non-disability at step five of the sequential evaluation process. Doc. 18 at 19. To decide whether a person is disabled, the Social Security Administration (SSA) uses a five-step sequential process. 20 C.F.R. § 416.920(a)(4). The claimant has the burden of persuasion through step four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). The burden shifts to the Commissioner at step five to show the claimant can perform other jobs that exist in significant numbers in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). If the Commissioner satisfies that burden, the burden shifts back to the claimant to show he cannot perform the jobs identified by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

An ALJ may use a VE's testimony for the step-five finding. 20 C.F.R. § 416.966(e); *See Winschel*, 631 F.3d at 1180. For the expert's testimony to be substantial evidence, the ALJ must pose a hypothetical question that includes the claimant's impairments. *Winschel*, 631 F.3d at 1180. The SSA "consider[s] that work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a). "The SSA 'will take administrative notice of reliable job information available from various governmental publications,' including the DOT, county business patterns and census reports published by the United States Census Bureau, occupational analyses prepared for the SSA by state agencies, and the Occupational Outlook Handbook published by the Bureau of Labor Statistics." *Viverette v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 49689, at *13 (M.D. Fla. Mar. 23, 2020) (citing 20 C.F.R. § 416.966(d)(1)-(5)).

"The ALJ, relying on the vocational expert's testimony, and not the vocational expert, determines whether a specific number of jobs constitutes a significant number." *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005). "The question . . . is not whether the expert's *testimony* is supported by substantial evidence. It is whether the ALJ's *decision* is supported by substantial evidence." *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019) (emphasis in original).

Claimant argues that the VE's testimony does not constitute substantial evidence to support a finding of non-disability at step-five because the VE relied exclusively on SkillTRAN for job numbers without an independent labor market survey. Doc. 18 at 20. The relevant testimony at the hearing is as follows:

ALJ: Counsel, do you have any objection to the qualifications of the VE?

Claimant's Counsel: No objection.

\*\*\*

ALJ: If you assume a hypothetical individual of the claimant's age, education and work history with the residual functional capacity I just described, could that individual perform any occupations in the national economy?

VE: I'd like to clarify one of the items. You indicated that could frequently reach, handle and finger with the right hand. Is that correct?

ALJ: Yes. Sorry, no, handle, finger and feel with the right hand for that hypothetical.

VE: Okay.

ALJ: So, would be limited to frequent handling, fingering and feeling with the right hand.

VE: Ok. I can give you some jobs.

ALJ: Thank you.

VE: Merchandise marker, DOT number 209.587-034, light, skill level 2. Estimated number of jobs in the national economy, 271,389. Gate guard, DOT 372.667-030, light, skill level 3. Estimated number of jobs in the national economy, 134, 368. And, counter

clerk, DOT number 249.366-010, light, skill level 2.  Estimated number of jobs in the national economy 1,618.  Those would be representative.

\*\*\*

ALJ:  Thank you.  Has your testimony been consistent with the *Dictionary of Occupational Titles* and the *Selected Characteristics of Occupations*?

VE:  Yes, it has.

ALJ:  Were any of the limitations we discussed today not addressed in the *DOT* or *SCO*?

VE:  That's based on my education, background and experience.

\*\*\*

Claimant's Counsel:  Ms. Moses, if a person - - I'm sorry.  Where did you consult to get those job numbers that you came up with for the jobs that you mentioned?

VE:  I use a computerized system.  It's called Job Browser Pro and it's put out by SkillTRAN.

Claimant's Counsel:  Did you run any independent labor market surveys?

VE:  I did not.

Claimant's Counsel:  When you said that that would require an accommodation for hypothetical number two, you were saying there would be no jobs for that hypothetical?

VE: Correct.

Claimant's Counsel:  No further questions, Your Honor.

R. 66, 67, 70.

Claimant contends that the VE "merely regurgitated numbers that were given to her by a computer program," and the ALJ failed to elicit testimony from the VE as to whether the endorsed SkillTRAN numbers were based on her knowledge and experience.  Doc. 18 at 20.  As such, Claimant contends that the ALJ failed to apply the correct legal standards.  *Id*.

The undersigned finds that Claimant's argument is well-taken.  In recent years several cases have addressed the issue of whether an ALJ may rely on the testimony of a VE who derived job numbers data from computer software such as Job Browser Pro.  Some courts have found that a VE's exclusive reliance on software program without any testimony or evidence that the VE could endorse those numbers based on his or her personal knowledge and expertise rendered the testimony unreliable.  *See Thompson v. Comm'r of Soc. Sec.*, 2016 WL 1008444, at *6 (M.D. Fla. Mar. 15, 2016).  However, other courts have affirmed the ALJ's reliance on the VE testimony when the VE relied on the software.  *See Middleton v. Comm'r of Soc. Sec.*,  2018 WL 1371246, at *7 (M.D. Fla. Feb. 27, 2018) (collecting cases).

The undersigned reaches the same conclusion as the court in Middleton, that after a review of the specific facts of this case there is no basis for reversal and remand.  Here, as in *Middleton*, Claimant did not challenge the VE's qualifications at the administrative hearing or to this Court, did not object when the VE offered her opinion or move to strike after learning that the expert was relying on SkillTRAN, and did not ask to review the computer generated report.  In fact, even after the VE confirmed that she did not run an independent labor market survey, Claimant's counsel failed to ask whether the VE *exclusively* relied on SkillTRAN.  Instead, the VE testified that her testimony would be consistent with the DOT and, while not entirely clear, it appears that the VE also indicates that she relied upon her own experience and expertise.  *See* R. 70.

Moreover, the Claimant has failed to offer any evidence to undermine the VE's testimony.  Even though it is the Commissioner's burden at step five, Claimant still does not contend that the testimony was somehow inaccurate.  The record shows a number of jobs available in the national economy and the VE also testified that the jobs were representative.

Based on the circumstances of this case and taking into consideration the deference in this Circuit to the VE's testimony, the undersigned finds that Claimant is not entitled to relief.

## **CONCLUSION**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**ORDERED** in Orlando, Florida on July 30, 2020.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE